IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEITH ROY,                          )
                                    )
            Petitioner,             )
                                    )
    vs.                             )        Case No. 4:02CV00682 AGF
                                    )
AL LUEBBERS,                        )
                                    )
            Respondent.             )

## MEMORANDUM AND ORDER

Presently before the Court is the pro se petition of Missouri prisoner Keith Roy for

a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[1]  Petitioner was convicted

following a bench trial of one count of second-degree murder, three counts of first-degree

assault, two counts of first-degree robbery, and six corresponding counts of armed

criminal action.  He was sentenced to multiple terms of imprisonment, including a life

term on the murder count.  The Missouri Court of Appeals affirmed Petitioner's

convictions and sentences.  His motion for post-conviction relief was denied by the trial

court, and this denial was affirmed on appeal.

In the present habeas action, Petitioner claims that his constitutional rights were

violated in the following ways:

(1)  The trial court incorrectly overruled Petitioner's motion to sever his trial
from the trial of a co-defendant;

---

[1]    The parties have consented to the exercise of authority by the undersigned United
States Magistrate, pursuant to 28 U.S.C. § 636(c).

(2)  Appellate counsel rendered ineffective assistance in failing to argue on appeal that the evidence was insufficient to support the robbery and corresponding armed criminal action convictions;

(3)  Petitioner was denied his right to testify as the result of ineffective assistance of trial counsel; and

(4)  Trial counsel rendered ineffective assistance in failing to call two alibi witnesses identified by Petitioner.

Respondent argues that this Court is barred from considering Petitioner's third and fourth claims because Petitioner procedurally defaulted these claim in state court by failing to present them to the state appellate court.  Respondent argues that the two remaining claims should be denied because the state courts' adjudication of them did not involve an unreasonable application of federal law or an unreasonable determination of the facts.  For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

On October 10, 1996, Petitioner and co-defendant Damon Cain ("Cain") were charged with one count of first-degree murder, two counts of Class A first-degree assault, one count of Class B first-degree assault, two counts of first-degree robbery, and six corresponding counts of armed criminal action.  Another co-defendant, James Ewing, also known as Devan Riggins ("Riggins"),[2] was charged with only the two robbery counts and

---

[2]  This individual was indicted and referred to at trial under the name of Devan Riggins. When he testified, however, he informed the court that his name was James Ewing.  Tr. at 209.

their corresponding armed criminal action counts.  Resp. Ex. C. at 14-16.[3]  In a substitute

information filed on June 5, 1997, the two Class A first-degree assault charges were

changed to Class B first-degree assaults.[4]  Resp. Ex. C at 47-49. The charges arose out of a

shooting spree that took place on the evening of October 24, 1995.

Following a mistrial in June 1997 Riggins agreed to testify for the state in exchange

for a ten-year sentence.  Id. at 232-33.  Petitioner and Cain each waived his right to a jury

trial, requesting a bench trial before the judge who had presided over the mistrial.  Resp.

Ex. A at 6-9.  They also moved to sever their cases for trial.  Petitioner argued that the

antagonistic nature of his and Cain's defenses presented a serious risk that a joint trial

would prevent a jury from making a reliable judgment about Petitioner's guilt or

innocence.  Petitioner attested that he had never been convicted of a crime, whereas Cain

had been convicted of crimes similar to those charged in this case, and that introduction of

this at a joint trial would prejudice Petitioner.  Resp. Ex C at 51-52, 62-64, 65-66.  The

motion to sever was denied, and Petitioner and Cain were tried jointly before the court.

---

[3]    A third robbery count and corresponding armed criminal action count were dismissed
prior to trial.  Resp. Ex. at 38.

[4]    Under Missouri law, a person commits first-degree assault "if he attempts to kill or
knowingly causes or attempts to cause serious physical injury to another person."  Mo.
Rev. Stat., § 565.050.  First-degree assault "is a class B felony unless in the course thereof
the actor inflicts serious physical injury on the victim in which case it is a class A felony."
Id.

**Trial**

At the bench trial, various witnesses presented their versions of the events in the case.  Neither Petitioner nor Cain testified.  The State adduced evidence that shortly before 8:30 p.m. on the evening of October 24, 1995, Petitioner, Riggins, and Cain, all young adults, decided to rob someone and headed over to a nearby street which was known to be frequented by drug dealers.  Petitioner had a small revolver with him.  At the time, Maurice Thomas ("Maurice"), his nineteen-year-old brother Ray Thomas ("Ray"), Willie Hughes, and Richard McDaniels were together in front of an apartment building on this street.  At about 8:30 p.m., Maurice noticed the three young men approaching.  He recognized Petitioner and Riggins from school and from playing basketball.  Just as the three young men neared the apartment building, Rochelle Black and her boyfriend, Antwoin Holmes, walked by on their way out of the building.

Petitioner came up to Maurice and asked him if he had any marijuana to sell. Maurice testified that he said no, and that he and his brother started to walk away.  Riggins testified that at this point someone other than the three perpetrators pulled out a gun, which Petitioner grabbed.  A few seconds later, Cain had his arm around Mr. Holmes and pointed a gun at his head.  Petitioner and Cain ordered everyone to get to the ground.  Maurice and Mr. McDaniels hit the ground, and Ray appeared to be getting down too.  Riggins reached down and stole some money from one of the men on the ground.  Meanwhile, Cain pushed Ms. Black and Mr. Holmes to the ground.  Multiple gun shots were then fired in rapid succession, after which Petitioner, Cain, and Riggins ran off.

4

Maurice realized that his brother Ray had been shot and was in serious condition. Maurice ran down the street to their mother's house to tell her that she had better come over because Ray was not going to live. An autopsy revealed that Ray had been shot four times, and that a direct shot to the back of his head had killed him. Mr. Holmes was shot once in the side, a bullet creased Mr. Hughes' head, and Ms. Black was hit by five bullets. No shell casings were recovered from the crime scene. This fact, along with the number of injuries, indicated that the shots were fired from two revolvers.

The purse Ms. Black had been carrying was later found by the police in the grass near the crime scene. The strap of the purse was torn. Ms. Black did not recall who took her purse, but testified that when she left the apartment building the purse was slung over her head and shoulder with the strap intact, and that when she was lying on the ground after she was shot, she had the purse and had not placed it where it was found by the police. Resp Ex. A at 136-37. Mr. Holmes was shown a photograph of where the purse was found and testified that it was not "anywhere near" where Ms. Black was during the shooting. Resp. Ex. A at 181.

In closing argument, counsel for Cain stressed the inconsistencies in the stories of the various witnesses and the lack of direct evidence as to the exact actions of the defendants at the crime scene. He argued that there was no evidence of deliberation to support a conviction for first-degree murder. Id. at 343-51. Counsel for Petitioner argued that most of the eyewitnesses who testified were involved with drugs and lied on the stand. Counsel argued that Petitioner, Cain, and Mr. Riggins went to the street in question to buy

5

drugs, not to rob anyone; that both sides had guns; and that panic broke out and someone ended up dead.  Id. at 352-55.

The trial court found Petitioner guilty of second-degree murder of Ray Thomas, Class A first-degree assault of Ms. Black, Class A first-degree assault of Mr. Holmes, Class B first-degree assault of Mr. Hughes, first-degree robbery of Ms. Black, and five corresponding counts of armed criminal action.  The court acquitted Petitioner of the robbery of Mr. McDaniels and the corresponding armed criminal action.  The court sentenced Petitioner to life imprisonment for the murder and corresponding armed criminal action; 30 years for the Class A first-degree assault of Ms. Black and corresponding armed criminal action; 30 years for the Class A first-degree assault of Mr. Holmes and the corresponding armed criminal action; 15 years for the Class B first-degree assault of Mr. Hughes and the corresponding armed criminal action; and 30 years for the robbery of Ms. Black and the corresponding armed criminal action.  All sentences were concurrent, except for the 30-year sentence for the assault of Ms. Black, which was consecutive to the other sentences.  Resp. Ex. C at 80-84.

## Direct Appeal

On direct appeal, Petitioner argued that (1) the trial court erred in denying his motion for severance; (2) the trial court erred in finding him guilty of Class A first-degree assault with respect to Ms. Black and Mr. Holmes, and sentencing him for these crimes beyond the 15-year maximum for the Class B first-degree assault that was charged; and (3) the evidence was insufficient to support the convictions for Class A first-degree assault,

because the state failed to prove that Ms. Black or Mr. Holmes sustained serious physical injury.  Resp. Ex. D.

The Missouri Court of Appeals affirmed the convictions and sentences.  The court summarized the facts viewed in the light most favorable to the verdicts as follows:

> Defendant conspired to commit robbery with Damon Cain and James Ewing. Four people were shot during the robbery and one died.  Only Defendant and Cain had guns at the time of the shooting, and multiple shots were fired by two different guns.  Ewing identified Defendant and Cain as the parties responsible for the shooting.

Resp. Ex. F at 2.

The appellate court summarily denied Petitioner's first point on appeal.  The Court then held that the trial court had erred in finding Petitioner guilty of Class A assaults when he had been charged with Class B assaults.  The court found that there was sufficient evidence to support convictions for Class B assaults with respect to Ms. Black and Mr. Holmes.  Accordingly, the court reduced the Class A assault convictions to convictions of Class B assaults and remanded the case for resentencing as to those crimes and the corresponding armed criminal actions.  Id. at 2-3.  On remand, Petitioner's sentences on the four affected convictions were each reduced from 30 years' imprisonment to 15 years' imprisonment.  Resp. Ex. H at 34.

**State Post-conviction Proceedings**

In his amended motion for state post-conviction relief, Petitioner asserted the claims of ineffective assistance of appellate counsel, denial of the right to testify, and ineffective assistance of trial counsel for failing to call alibi witnesses raised in his present

habeas action as claims (2), (3), and (4), respectively. Resp. Ex. H at 19-32. Following an evidentiary hearing, the same judge who had presided at the bench trial denied Petitioner's motion on all grounds. The only issue raised on appeal from this denial was habeas claim (2) -- that appellate counsel rendered ineffective assistance in failing to argue on appeal that the evidence was insufficient to support the robbery and corresponding armed criminal action convictions. Resp. Ex. I.

The Missouri Court of Appeals affirmed the motion court, holding that there was sufficient evidence to support Petitioner's conviction of first-degree robbery of Ms. Black, and that thus, appellate counsel could not be deemed to have been ineffective for failing to raise this issue. The court pointed to evidence that Ms. Black's purse was found "some significant distance away" from where she had been pushed to the ground; that the purse, which was intact before, now had a torn strap; that Ms. Brown did not give anyone permission to take the purse; that she did not place it where it was found; that Ms. Black was wearing the purse in a manner that made it unlikely for it to fall away from her body when she hit the ground; and that Petitioner and his accomplices went to the crime scene with the intent to rob one or more individuals. The appellate court did not address any of the non-appealed claims. Resp. Ex. K.

## DISCUSSION

### Procedural Default

Respondent correctly argues that the Court is procedurally barred from considering Petitioner's claim that he was denied his constitutional right to testify due to the ineffective

assistance of trial counsel, and that trial counsel rendered ineffective assistance in failing to call two alibi witnesses identified by Petitioner. Under the doctrine of procedural default, a federal habeas court is barred from reviewing a claim that a habeas petitioner did not adequately present to the state courts, meeting the state's procedural requirements for doing so. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Coleman v. Thompson, 501 U.S. 722, 732 (1991)). A Missouri prisoner procedurally defaults a claim of ineffective assistance of trial and/or appellate counsel that was raised in a post-conviction motion by failing to raise the claim on appeal from the denial of that motion. Hagen v. State of Iowa, 2005 WL 1491227, at *1-2 (8th Cir. June 24, 2005) (per curiam) (unpublished); Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997); Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996).

A habeas petitioner can overcome a procedural default if he demonstrates both cause for the default and actual prejudice therefrom, or that the failure to review the federal claim "will result in a fundamental miscarriage of justice." Dretke v. Haley, 541 U.S. 386, 388-89 (2004). The miscarriage-of-justice exception permits review of a defaulted claim "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

In his traverse, Petitioner asserts actual innocence to excuse his procedural default. To excuse a procedural default, "[t]he requirements to establish the requisite probability of innocence are high. [A habeas petitioner] must first come forward with new evidence that was not available at trial, and then he must show that 'it is more likely than not that no

reasonable juror would have convicted him in light of the new evidence.'" Osborne v.

Purkett, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327

1995)); Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001)).  Petitioner has not

presented any new evidence of his innocence.  This Court is accordingly barred from

considering claims (3) and (4) and turns to consider the merits of Petitioner's remaining

claims.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when

a claim has been adjudicated on the merits in state court, an application for a writ of

habeas corpus cannot be granted unless the state court's adjudication

> (1)  resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  "AEDPA effected a move toward greater deference in the § 2254

courts' review of state-court decisions."  Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir.

2004) (en banc), cert. denied, 125 S.Ct.1397 (2005).

The "contrary to" clause is satisfied if a state court has arrived "'at a conclusion

opposite to that reached by [the Supreme Court] on a question of law'" or "'confronts facts

that are materially indistinguishable from a relevant Supreme Court precedent'" but arrives

at the opposite result.  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v.

Taylor, 529 U.S. 362, 405 (2000)).  A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413; Linehan v. Milczark, 315 F.3d 920, 924 (8th Cir. 2003).

A case cannot be overturned merely because it incorrectly applies federal law; the application must also be "unreasonable."  Williams, 529 U.S. at 411; Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable").  "The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to an even more deferential review."  Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001).  Factual findings by the state court "shall be presumed to be correct, a presumption that will be rebutted only by "clear and convincing evidence."  28 U. S. C. § 2254(e)(1).

## Denial of Motion to Sever

Petitioner argues that his due process rights to a fair trial were violated by the trial court's denial of his motion to sever his case for trial from that of Cain.

> A habeas petitioner is not entitled to relief on the grounds that he was entitled to a severance unless he can show that a joint trial was fundamentally unfair. Fundamental unfairness is shown where mutually antagonistic defenses compromised a specific trial right or prevented the jury from making a reliable determination of guilt or innocence.  Mutually antagonistic defenses are those which force the jury to disbelieve the core of one defense in order to believe the core of the other.

Hood v. Helling, 141 F.3d 892, 896 (8th Cir. 1998) (citations omitted).

Petitioner maintains that he was prejudiced in the following ways:  (1) statements

made by Riggins were admissible against Cain but not against Petitioner; (2) Petitioner "had no prior convictions, and was subject to jury sentencing and Cain, with his extensive prior record was not"; and (3) Petitioner and Cain had mutually antagonistic defenses in that Petitioner's defense to the murder was misidentification as to the shooter, while Cain's defense was sudden passion. He argues that the evidence against him was "relatively weak" because no one could positively identify him as the shooter. Petitioner also states that the failure to sever Cain's trial from his own "meant that Petitioner had to waive his constitutional right to a jury trial."

"[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro v. United States, 506 U.S. 534, 540 (1993). Rather, as stated above, a Defendant must show that "a joint trial was fundamentally unfair." Hood, 141 at 896. Petitioner's arguments fall far short of the mark.

Petitioner argues that statements by Riggins were admissible against Cain but not against Petitioner, but Petitioner does not identify what those statements were. At the time Petitioner filed his motion for severance, Riggins was a co-defendant and Petitioner then asserted to the trial court that inculpatory statements by Riggins, that were not otherwise admissible against Petitioner, would come into evidence in a joint trial with Riggins. This argument became moot, however, because Riggins entered a plea prior to trial and appeared not as a co-defendant, but as a witness for the state. Even if Petitioner had properly preserved the argument that he now makes, he does not identify a single statement made by Riggins that would be admissible against Cain, but not against Petitioner. And this Court is

unable to find any such statements based upon its own review of the record.

Petitioner's next assertion, that denial of the motion to sever somehow forced him to waive his right to a jury trial, is refuted by the record. Petitioner first filed a pro se waiver of his right to jury trial on October 6, 1997. Resp. Ex. C at 50. He filed a pro se motion to sever, with supporting affidavit, on October 16, 1997. Id. at 62-64, 51-52. Counsel for Petitioner filed a written motion for severance, asserting the same or similar grounds, on October 21, 1997. Id. at 65-66. In neither of the motions for severance did Petitioner assert that his waiver of a jury trial was in any way related to his motion to sever, nor did Petitioner assert any such connection when the trial court addressed Petitioner's waiver of his right to a jury trial in open court. Resp. Ex. A at 5-7. Rather, Petitioner stated that he desired to waive his right to a jury trial because he did not feel a jury trial would be in his best interest. Id. at 7. The trial court ruled on the motion to waive a jury trial prior to ruling on the motion to sever, and after ruling on the severance motion, the trial court gave Petitioner an opportunity to re-confirm his desire to waive his right to a jury trial – which he did. Id. at 7-8, 13.

Nor does the record support Petitioner's assertion that his and Cain's defenses were so irreconcilable as to render the joint trial fundamentally unfair. Neither Petitioner nor Cain testified at trial. In his habeas petition, Petitioner acknowledges, from a factual standpoint, that his presence at the scene was "irrefutable." He merely asserts that the extent of his own involvement was in dispute, and that there was little, if any, evidence to suggest he was one of the shooters. Cain basically argued that none of the government

witnesses were truthful, especially not Riggins. He argued that he, Riggins, and Petitioner walked up to the other group of individuals; the other side was armed; the other side pulled a gun; the situation went from negotiation to highly charged; shots were fired; there were several sources of bullets; and from the evidence, no one can say who did what. Cain did not point the finger at Petitioner.

Cain's position was not at all inconsistent with Petitioner's. Petitioner asserted in closing that the gun was possessed by someone in Maurice's group, that Willie Hughes had a gun, and that there was gunfire and panic. Indeed, after Cain's closing argument, Petitioner's attorney began his own closing with the statement, "I do agree with what [Cain's attorney] just stated to the court." Resp. Ex. 1 at 352.

Even if some inconsistencies could be divined, they are not sufficient to render the joint trial fundamentally unfair. See Hood, 141 F.3d at 895-97 (where both defendants took position that the killing was justified, but each said the other was the one who pulled the trigger, defenses not sufficiently antagonistic to require severance); Hollins v. Department of Corr., State of Iowa, 969 F.2d 606, 608 (8th Cir. 1992) (state court's failure to sever trial of petitioner charged with aiding and abetting murder from that of his co-defendant did not render trial fundamentally unfair where defendants did not center their strategies on attempting to incriminate each other). As the Eighth Circuit stated in Hood, "[m]utually antagonistic defenses are those which force the jury to disbelieve the core of one defense in order to believe the core of the other." Hood, 141 F.3d at 896. No such defenses were presented here. Moreover, the fact that this was a court-tried case weakens any prejudice

that might have inured to Petitioner by being tried jointly with Cain.

In sum, the Court concludes that the state courts' adjudication of this claim did not result in a decision that was contrary to or involved an unreasonable application of Supreme Court precedent, or in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial.

## Ineffective Assistance of Appellate Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial and direct appeal counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). When a claim involves appellate counsel, to prove ineffective assistance, a habeas petitioner must show that counsel's performance fell below an objective standard of reasonableness in failing to raise a claim on appeal and that there is a reasonable probability that the result of the appeal would have been different had the claim been raised. Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002); Carter v. Bowersox, 265 F.3d 705, 713-14 (8th Cir. 2001). Counsel is not required to raise every colorable claim on appeal; unless there is evidence to the contrary, a federal habeas court assumes that counsel's decision not to raise a claim was a strategic decision to emphasize stronger claims at the expense of weak ones. Armstrong v. Gammon, 195 F.3d 441, 444 (8th Cir. 1999).

Under Missouri law, the relevant inquiry in challenges to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. (citing State v. Williams, 784 S.W.2d 309, 311 (Mo. Ct. App.1990)). Under Missouri law, a person commits first-degree robbery by forcibly

stealing property if, inter alia, the person is armed with a deadly weapon. Mo. Rev. Stat. §

569.020.1(2). "Stealing" is defined in § 570.030 as "appropriat[ing] property or services of

another with the purpose to deprive him or her thereof, either without his or her consent or

by means of deceit or coercion." Section 570.010(3) defines "appropriate" to mean "take,

obtain, use, transfer, conceal or retain possession of." "The statute clearly establishes that

exercising control by any of the enumerated acts, with the requisite intent, is a prohibited

"'appropriation'"; asportation (carrying it away) is not an essential element of stealing.

State v. Boyle, 970 S.W.2d 835, 838 (Mo. Ct. App. 1998).

Here, the Missouri Court of Appeals applied the correct legal standard to Petitioner's

claim of ineffective assistance of appellate counsel. The state appellate court reviewed the

evidence, determined that there was sufficient evidence to support Petitioner's conviction of

robbery of Ms. Black, and concluded that, therefore, Petitioner's claim that appellate

counsel was ineffective for not raising a sufficiency-of-the-evidence claim was without

merit.

The Court further concludes that the decision of the Missouri Court of Appeals was

not based upon an unreasonable determination of the facts in light of the evidence

presented at trial. "It is well-settled that the jury is entitled to consider circumstantial

evidence exactly as it would direct evidence." Sera v. Norris, 400 F.3d 538, 544 (8th Cir.

2005) (citation omitted). The Court recognizes that the evidence of robbery with respect to

Ms. Black (and the corresponding armed criminal action) was not strong. However, both

the standard for a Missouri defendant prevailing on a claim of insufficiency of the evidence

and the standard for this Court finding a state appellate court's decision unreasonable are very stringent. Upon review of the record, the Court cannot say that the state appellate court's determination that the evidence was sufficient for "any reasonable juror" to find Petitioner guilty beyond a reasonable doubt of the robbery is unreasonable. Especially significant are the facts that the strap of the purse was torn and the purse was not found right near where Ms. Black was when she was shot, indicating that the purse had been forcibly taken from her. Accordingly, Petitioner is not entitled to habeas relief on the basis of appellate counsel's failure to raise this claim on appeal. See Armstrong, 195 F.3d at 454 (affirming denial of habeas petitioner's claim that appellate counsel was ineffective for failing to raise sufficiency of the evidence claim, where state appellate court properly found that reasonable probability did not exist that outcome of appeal would have been different had counsel raised the claim).

## CONCLUSION

Petitioner is not entitled to federal habeas relief on any of the claims he raises. For purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2), the Court does not believe that petitioner has made a "substantial showing of the denial of a constitutional right," or that "reasonable jurists" might find the Court's procedural rulings or assessment of the merits of petitioner's claims "debatable or wrong." See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (standard for issuing a Certificate of Appealability) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that Keith Roy's petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of September, 2005.